UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TRACY N.[1],

                               Plaintiff,         Case # 19-CV-1609-FPG

v.                                                      DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,
                               Defendant.

## INTRODUCTION

On October 25, 2016, Plaintiff Tracy N. protectively applied for Supplemental Security Income under Title XVI of the Social Security Act (the "Act") and Disability Insurance Benefits under Title II of the Act, alleging disability beginning March 22, 2016, due to a stroke with right side weakness, mental health problems, memory loss, anxiety, and depression. Tr.[2] 146, 230-42, 260. After the Social Security Administration ("SSA") initially denied her claim, Tr. 172-79, Plaintiff appeared, with counsel, at a hearing on October 12, 2018 before Administrative Law Judge Stephan Bell (the "ALJ"). Tr. 113-45, 182-83. On December 21, 2018, the ALJ issued an unfavorable decision, finding that Plaintiff was "not disabled" within the meaning of the Act. Tr. 96-108. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the SSA. Tr. 1-6. Plaintiff then appealed to this Court.[3] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 12, 15. For the reasons that follow, Plaintiff's motion is DENIED and the Commissioner's motion is GRANTED. The ALJ's decision is AFFIRMED.

---

[1] In accordance with this Court's November 18, 2020 Standing Order regarding the identification of non-government parties in social security decisions, available at https://www.nywd.uscourts.gov/standing-orders-and-district-plans, this Decision and Order will identify Plaintiff using only her first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 9.

[3] The Court has jurisdiction over this action under 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3).

1

**LEGAL STANDARD**

**I.     District Court Review**

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

**II.    Disability Determination**

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of his or her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 416.920.

**DISCUSSION**

**I.     The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in gainful activity since the alleged onset date. Tr. 98. At step two, the ALJ found that Plaintiff had the following severe impairments: status post left middle cerebral artery stroke; generalized anxiety disorder; depressive disorder not otherwise specified; and an adjustment disorder. Tr. 98. At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any Listings impairment. Tr. 99-100. Next, the ALJ determined that Plaintiff retained the RFC to perform work at all exertional levels, with several additional limitations, including, as relevant here, that Plaintiff could perform "simple, routine and repetitive tasks but not at a production rate pace" and could "perform simple work-related decisions," but could not have "more than occasional interaction with supervisors and coworkers" and could "never interact with the public." Tr. 100.

At steps four and five, the ALJ concluded that Plaintiff was capable of performing past relevant work as a cleaner and that there were jobs in the national economy that Plaintiff could perform. Therefore, the ALJ concluded that Plaintiff is not disabled. Tr. 106-08.

**II.    Analysis**

Plaintiff advances two related arguments. First, Plaintiff contends that the ALJ improperly afforded "little weight" to the opinions of her treating physician, Kalaiselvi Rajendran, M.D. ECF No. 12-1 at 4. Second, Plaintiff argues that the Appeals Council erred in rejecting an opinion from Dr. Rajendran—produced after the ALJ issued his decision—on the basis that it did not show a reasonable probability that it would change the outcome of the ALJ's decision. Tr. 2. The Court disagrees with Plaintiff.

### A.     The ALJ Did Not Err in Affording "Little Weight" to Dr. Rajendran's Opinions

An ALJ must give a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may discount a treating physician's opinion if it does not meet this standard, but he must "comprehensively set forth his reasons" for doing so. *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (the SSA "will always give good reasons" for the weight afforded to a treating source's opinion).

When a treating physician's opinion is not given controlling weight, an ALJ considers the following factors to determine how much weight it should receive: (1) whether the source examined the claimant; (2) the length, nature, and extent of the treatment relationship; (3) whether the source presented relevant evidence to support the opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether a specialist rendered the opinion in his or her area of expertise; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

Here, Plaintiff received treatment from her treating psychiatrist, Dr. Rajendran, since at least December 2015. *See* Tr. 497-98. As part of her treatment notes, Dr. Rajendran noted that Plaintiff was not able to "function in a competitive fashion" and was "disabled."[4] Tr. 526. The ALJ gave these statements "little weight" because, while they were from Plaintiff's treating psychiatrist, they "did not provide any specific limitations" and were a "conclusory opinion of

---

[4] It is important to note that it is unclear from the treatment records whether these statements were Dr. Rajendran's opinions or simply a parroting of what Plaintiff herself had told Dr. Rajendran.

disability that is reserved for the Commissioner." Tr. 106. The Court finds no error in the ALJ's assessment of Dr. Rajendran's findings.

Dr. Rajendran's "opinion" that Plaintiff could not work was actually one of a series of statements tucked within Dr. Rajendran's extensive treatment records. The opinion—to the extent it was one at all—did not provide any function-by-function analysis of Plaintiff's workplace limitations. Rather, the opinion squarely addressed the ultimate issue, *i.e.*, whether Plaintiff is disabled. The ALJ need not accept a determination from a treating physician as to the ultimate issue of whether plaintiff is disabled. *Trepanier v. Comm'r of Soc. Sec.*, 752 F. App'x 75, 75 (2d Cir. 2018) (summary order) ("A bald statement that a claimant is 'disabled' represents an administrative finding, not a medical opinion."); *Snell v. Apfel*, 177 F.3d 128 (2d Cir. 1999).

Indeed, Dr. Rajendran's opinion that Plaintiff is precluded from work is belied by Dr. Rajendran's own treatment records. To be sure, in her treatment notes, Dr. Rajendran regularly describes Plaintiff—who was abused by her partner and suffered a stroke as a result—as anxious, depressed, and overwhelmed. Tr. 457-514; 521-34. As late as 2018, several of Dr. Rajendran's treatment records note that Plaintiff has trouble concentrating and with her memory. *See, e.g.*, Tr. 528. And Dr. Rajendran indicates that Plaintiff's functioning was "marginal." Tr. 530. But Dr. Rajendran's treatment records consist, almost exclusively, of Plaintiff's self-reporting,[5] which, while suggestive of mental health and memory issues, are also replete with references to Plaintiff's significant improvements. For example, in February 2016, Dr. Rajendran described Plaintiff's "affect and mood" as "improved." Tr. 502. Dr. Rajendran also characterized many of Plaintiff's issues as "situational." Tr. 531-34, 539-41. In December 2016, Plaintiff reported that her "anxiety

---

[5] While an ALJ must evaluate a plaintiff's subjective complaints, Dr. Rajendran seems to have equivocated on the extent of Plaintiff's mental health issues by repeatedly noting that Plaintiff "claims" that she has memory problems and cannot concentrate. Tr. 528-30.

is under control." Tr. 514.  Left with this inconsistent record, the ALJ was not obligated to adopt Dr. Rajendran's conclusory opinions.

Further cutting against Dr. Rajendran's opinion is a comprehensive neurological evaluation from Michael P. Santa Maria, Ph.D., which Dr. Rajendran ordered and to which the ALJ gave "[g]reat weight," Tr. 106.  Dr. Santa Maria evaluated Plaintiff twice in the fall of 2018, right around the time that Plaintiff was complaining to Dr. Rajendran of concentration and memory issues.  After reviewing Plaintiff's medical records and performing neuropsychological testing, Dr. Santa Maria diagnosed various mental health issues, but also noted that Plaintiff "demonstrated solid receptive and expressive language skills," even if though there was some evidence of "residual weakness involving some aspects of language, processing speed and complex attention." Tr. 549.  Dr. Santa Maria noted that Plaintiff "demonstrates overall memory abilities in normal range" and "reasonably good capacity for novel problem solving."  Tr. 549.  Recognizing that Plaintiff had suffered a blow to the head and a stroke, and had substance abuse problems and academic struggles, Dr. Santa Maria indicated that Plaintiff "performed well on multiple cognitive effort measures."  Tr. 550.  Moreover, Dr. Santa Maria relayed that "the current quantitative cognitive evaluation does not find evidence of any consistent pattern of deficiency in attention" even though there may be some weakness in "some aspects of complex attention."  Tr. 550.  Dr. Santa Maria concluded that, "[a]lthough there is evidence of subtle residual weaknesses associated with relative small left MCA territory infarct, this evaluation does not reveal a pattern of deficits that in my judgment would preclude [Plaintiff] from continued part time or full time competitive employment in various roles that she has handled in the past."  Tr. 550.

Dr. Santa Maria's assessment—*which Dr. Rajendran ordered*—is consistent with Dr. Rajendran's treatment records but inconsistent with her conclusory opinion that Plaintiff could not

work. It was therefore not error for the ALJ to give Dr. Rajendran's treatment note "opinions" little weight.

>    B.   The Appeals Council Did Not Err in Concluding That Dr. Rajendran's 2019 Opinion Would Not Change the Outcome of the ALJ's Decision

Plaintiff next argues that the Appeals Council erred in concluding that Dr. Rajendran's opinion rendered on January 11, 2019—after the ALJ filed his decision—"does not show a reasonable probability that it would change the outcome of the decision." Tr. 2. Again, the Court disagrees with Plaintiff.

"Pursuant to 20 C.F.R. § 416.1470(b), the Appeals Council must consider additional evidence that a claimant submits after the ALJ's decision if it is new, material, and relates to the period on or before the ALJ's decision." *Hollinsworth v. Colvin*, No. 15-CV-543-FPG, 2016 WL 5844298, at *3 (W.D.N.Y. Oct. 6, 2016). "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [ALJ] to decide [the] claimant's application differently." *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) (quoting another source). Where "the additional evidence undermines the ALJ's decision, such that it is no longer supported by substantial evidence, then the case should be reversed and remanded." *Webster v. Colvin*, 215 F. Supp. 3d 237, 244 (W.D.N.Y. 2016). In addition, the Appeals Council must determine "if there is good cause for failure to offer the new evidence previously." *Lugo v. Berryhill*, 390 F. Supp. 3d 453, 458 (S.D.N.Y. 2019).

Here, as the Appeals Council pointed out, Dr. Rajendran's opinion does not undermine the ALJ's decision such that it is no longer supported by substantial evidence. In the 2019 check-box opinion, Dr. Rajendran opined that Plaintiff had both marked and extreme limitations in *all* functional areas. Tr. 85-86. Dr. Rajendran opined that Plaintiff had "severe" limitations in "ability to understand, remember, and carry out instructions." Tr. 86. But Dr. Rajendran did not even rate

7

Plaintiff's limitations in ability to respond to supervision or coworkers, meet an employer's standards, respond to work pressures, and perform complex and simple tasks because, according to Dr. Rajendran, Plaintiff "can't work." Tr. 87. Strangely, elsewhere in the opinion, Dr. Rajendran indicated that Plaintiff has no problem getting along with family, friends, neighbors, or others, but Dr. Rajendran did not answer whether Plaintiff would be able to respond to coworkers or supervisors, noting "N/A Not Working." Tr. 88-89.

To be sure, Dr. Rajendran's opinion is *consistent* with her previous conclusory opinion that Plaintiff could not work. But it remains *inconsistent* with the rest of the record, including, as described above, Dr. Rajendran's own treatment notes—from which her conclusions were apparently drawn—and Dr. Santa Maria's in-depth assessment. There is simply nothing in the record, aside from this late submission, that corroborates these severe limitations. Rather, substantial evidence exists in the record to support the RFC that Plaintiff would only be able to perform simple, routine work, with no more than occasional interaction with coworkers and supervisors and no interaction with the public.

Moreover, the record itself is devoid of any "good cause" for failure to previously submit Dr. Rajendran's 2019 opinion. Plaintiff does argue, in her brief, that Dr. Rajendran "was not available for some time prior to the hearing," ECF No. 12-1 at 4, but does not provide any specifics that warrant a finding of good cause. Notwithstanding that Dr. Rajendran may have been unavailable for some undisclosed period of time prior to the hearing, it is undisputed that Dr. Rajendran treated Plaintiff for at least three years prior to the hearing and could have, at any time, provided a robust functional assessment. Yet Plaintiff waited until *after* the ALJ's decision to seek and provide such a report. Indeed, prior to the hearing, Plaintiff's counsel provided the ALJ with

outstanding records from Dr. Rajendran, which were received, Tr. 293-94, and at the hearing, counsel noted that no other records were outstanding, Tr. 118-19.

Accordingly, the Appeals Council did not err in its treatment of Dr. Rajendran's 2019 opinion.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 12, is DENIED, the Commissioner's motion for judgment on the pleadings, ECF No. 15, is GRANTED, and the complaint is DISMISSED WITH PREJUDICE.  The ALJ's decision is AFFIRMED.  The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: January 4, 2021
       Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court